## RUSSELL vs. RICHARDS & al.

An officer, in making sale of personal property on execution, has power to adjourn the sale to a *subsequent day*, and to a *different place*.

A. erected a building on the land of B. by the consent of the latter. Subsequently, A's creditor seised and sold the building on execution, to C. — B. then sold his land to D. After which, the building remained upon the land three years, unoccupied by C., during which time, the purchaser of the land gave no notice to C. to remove the building, nor made any objection to its remaining there. *Held*, that no waiver of C's. right to the building, could legally be inferred from these circumstances.

*Trover* will lie for a saw-mill, built by one upon the land of another, by the consent of the latter.

THIS was *trover* for a saw-mill, and is the same case reported in 1 *Fairf.* 429. It appeared that the mill in question was built by the procurement of *Aaron Church* and *Shubael Vance*, upon a privilege belonging to *William Vance*, by his consent. In *June*, 1827, *Seth Emerson* recovered judgment against said *S. Vance* and *Church*; and in *September* following, the mill was seised on the execution which issued upon said judgment, by *Simeon Bradbury*, a deputy sheriff, and after being duly advertised, was sold to the plaintiff, he being the highest bidder therefor.

It appeared, that, at the time and place originally appointed by the officer for the sale of the mill, no bidders were present; whereupon the officer adjourned the sale for a day or two, when a bid was made by a person, who being unable to comply with the terms, the officer again adjourned the sale for two or three days from *Baring*, the place first appointed, to a store at *Mill-town*, in *Calais*, about three miles from *Baring*.

The counsel for the defendants requested the presiding Judge, to instruct the jury that the officer had no right by law thus to adjourn the sale, either as to time or place — but he instructed them that the officer might do either, if not fraudulently or collusively done, to the prejudice of either of the parties.

It did not appear that the plaintiff demanded the mill, or that he took any measures for its removal until the last of *October*, 1830, when he demanded the mill of the defendants who were the grantees of *William Vance*.

The counsel for the defendants requested the Judge to instruct the jury, that the plaintiff had a reasonable time within which to remove the mill, and that three years could not be considered within a reasonable time for this purpose — and that, the plaintiff might be considered as having waived his right to the mill. But upon this point the Judge stated to the jury, that the mill having been originally placed upon the privilege of *William Vance*, by his consent, and that consent not appearing to have been revoked, and it not appearing that the plaintiff had been notified either by *Vance*, or by the defendants, his grantees, that the mill could not be suffered to remain there longer ; or that the plaintiff had ever been directed or requested to remove the same, the lapse of three years neither operated to change the property, nor was it evidence that the plaintiff had abandoned the mill.

The jury returned a verdict in favor of the plaintiff for $500 damages. If the instructions requested were not lawfully withheld, or if that which was given was erroneous, the verdict was to be set aside, and a new trial granted ; otherwise, judgment was to be rendered thereon.

A motion was also made in arrest of judgment, on the ground that an action of *trover* would not lie for a *saw-mill.*

*Allen* and *Boutelle*, for the defendants.

The officer in selling property on execution has no power to adjourn the sale as to time, and certainly not from one *town* to another. If it can be adjourned to an adjacent town, it can be to any one, the most distant in the county. There is the strongest reason, why, in the sale of personal property, it should be where the property is situated ; that purchasers may have an opportunity to examine it, and bid with a knowledge of its value. If cases may be supposed where a greater price might be obtained, they would be exceptions only, not the general rule. The statute regulating the sale of personal property, gives no power to the officer to adjourn the sale. Wherever the Legislature has intended that the power should be given, it has expressly provided for it ; as in the cases of sales of equities of redemption, sales of administrators, &c. The power is not inherent in the office from the nature of the office. It is not necessary that it should exist, in order to carry into effect some other power *expressly* granted.

It is not incidental to the principal thing. It would lead to looseness of practice, to fraud and collusion.

2. *Trover* will not lie for a *saw-mill*. The mill is an entire thing;—is local, designed for, and fixed to the place;—built with reference to the stream, the head of water, the dam. By a conveyance of a mill alone, the privilege of the stream, and of the dam would pass — without it the mill would be useless. *Blake* v. *Clark,* 6 *Greenl.* 436.

The theory of the action of trover precludes the supposition that it can lie for a tenement, which from its nature is fixed to the spot where it is erected, and which cannot be removed without destruction.

It may be said, that being built by one man on the land of another, it becomes personal property ; still, if it be incapable of removal without destroying it, it is not the subject of an action of trover. Would *trover lie for a wharf built by one man on the land of another ?* Reason would revolt at such a position. Would it lie for a factory, built of stone or brick, for a forge or furnace ? The remedy in all these cases is, if the owner of the land refuses to the owner of the mill the use of it, for the latter to bring his action of assumpsit to recover the expense of building it. Or in this case, in an action for money had and received against *Vance*, for the proceeds of the sale of it. Or even by an action of eject-ment rather than to resort to so preposterous a method as that of an action of *trover.*

No authority for this purpose can be cited. The action of trover has been suffered to proceed far enough, when applied to shops and tenements capable of removal without destruction. To sustain this action would be incorporating into the body of our law, a rule of practice incongruous with its general symetry — with the theory on which the remedy by action of trover is founded — and revolting to reason and common sense.

They cited the following authorities. 1 *Dane's Abr.* 134 ; *Osgood* v. *Howard,* 6 *Greenl.* 452 ; *Wells* v. *Bannister,* 4 *Mass.* 514; *How* v. *Starkweather,* 17 *Mass.* 243 ; *Titcomb* v. *Union M. & F. Ins. Co.,* 8 *Mass.* 326.

*Kidder,* for the plaintiff, to show an authority in the officer to

adjourn the sale, relied on the case of *Warren* v. *Leland*, 9 *Mass.* 264. He also argued at length in support of the position that trover would lie in a case like this.

The opinion of the Court was delivered in *Cumberland*, at the term in *August* ensuing, by

MELLEN C. J. — This cause has been once under our consideration, see 1 *Fairf.* 429. The principal question then distinctly presented to view had respect to the *nature* of the property which *Church* and *S. Vance* had in the mill, which they erected at their expense on the land and by the consent of *William Vance;* and to the effect and operation of the deed from him to the defendants in the then existing circumstances of the property and the parties to the conveyance. The verdict, which was in favor of the defendants, was then set aside, and a new trial granted, for the reasons there stated. By setting aside the verdict, the Court indirectly, at least, decided that the *form of action*, was no objection to the plaintiff's right to recover.

Several objections founded on the report of the Judge before whom the second trial was had, have been urged; and one in support of a motion in arrest of judgment. The first objection relates to the ruling of the Judge as to the right of the officer, who sold the mill to the plaintiff, to adjourn the vendue, as he did, to two succeeding days, and also to a different place, in another town, distant about three miles from the place originally appointed as the place of sale. Under the instructions given by the Judge, the jury have found that the vendue was not adjourned in the manner above stated, fraudulently or collusively or to the prejudice of either party. Upon a careful examination, we have not found any authority expressly given by statute to a sheriff to adjourn the vendue of personal property taken on execution from, and belonging to an individual, either to a *subsequent day* or to a *different place.* Yet it is easy to state cases where such sheriff might not have possible time to complete the sale on the day appointed, owing to the amount of the property, and the multitude of articles, which he had seised. Again, the day appointed might be so stormy that no persons could or would attend the auction with a view of purchasing, or for some other cause, as was the fact in the present case; or if present, persons

Russell *v.* Richards & al.

might not incline to bid. In such circumstances what could a sheriff do, unless he could adjourn the sale? Must the creditor lose his debt, by losing the attachment, without any fault in any one on whom he could effectually call for damages? This would seem a harsh construction of a law, made for the benefit of creditors. When an officer, acting fairly, and anxiously consulting the best interests of the creditor and the debtor too, adjourns the sale, so as to obtain as high a price as he can, must a court of law pronounce this very act an official wrong, and declare the sale void in consequence, and on the objection of one who has no interest whatever in the question, whether the articles are sold at a high price or a low one? But as to the authority of a sheriff to adjourn his vendue, we are not obliged to depend on general reasoning as to expediency and convenience. In the case of *Warren* v. *Leland*, 9 *Mass.* 265, the Court, then consisting of *Parsons C. Justice*, and *Sewall* and *Parker Justices*, expressly recognized an officer's right to adjourn his vendue to a subsequent day, when circumstances required it; and that by so doing he can continue the lien upon the property created by the attachment : and in that case, the attachment was lost by the omission to adjourn, and a second attaching creditor held the property. It is not easy to discover why he may not for good reasons, and when acting with pure motives and for the benefit of all concerned, adjourn to a different *place*, as well as a different *day*. The usual verbal or written notice of the adjournment is just as effectual in one case as in the other. The law does not require the goods to be sold in the town where they are seised on execution. The sale is to be commenced or attempted in the place stated in the written notification of the sale, and at the appointed time. We are not aware that town lines are of any importance in the present case. The adjournment to *Mill-town*, according to the finding of the jury, must have been with good motives, and to the prejudice of no one.

The next objection is, that the instructions of the Judge were incorrect as to the question of reasonable time allowable to the plaintiff to remove the mill. That must depend on circumstances. It was on the land by permission of the former owner of the land. The defendants bought the land, and made no objection to its re-

maining there, by giving the plaintiff any notice to remove it. We perceive no ground for presuming a waiver of his rights ; and his demand, when made, was of itself proof that he had not intended, prior to that time, any waiver of them. If a man should suffer articles of furniture to remain three years in his neighbor's possession, without his paying any thing. for the use of them, or any communication being had between the parties, surely the law would not presume that a waiver of his rights was intended, or that it would be the consequence of his conduct. We do not perceive any sufficient ground for disturbing the verdict for any reasons appearing on the report of the Judge.

A motion is made in arrest of judgment, on the ground that an action of trover will not lie for a saw-mill. We have already decided in this cause that the mill in question, situated as it is, is *personal* property ; and it being such, it is subject to the operation of those principles which are applicable to other personal property. It is true, it cannot be useful to the plaintiff, as a mill with the usual privileges of such a building ; but the materials of which it is composed are of no small value when removed ; that value the jury have estimated. The counsel for the defendant seems to view the declaration as a kind of legal absurdity ; but this would instantly disappear, if the mill had been described under the name of the " *materials* of a certain saw-mill," &c. yet the legal effect is just the same, as the declaration now stands, connected with the whole facts of the case. Without enlarging any further, we only observe, that we are all satisfied that neither of the motions can be sustained ; and there must be

*Judgment on the verdict.*