MICKLE & CO. v. DOUGLAS *et al.*

1. **Mining Lease:** CONSTRUCTION: IMPLIED RESERVATION OF SUR-
FACE-OWNER'S RIGHTS. A mining lease made by defendants
granted to plaintiffs the right to mine "all the coal" under cer-
tain described premises. Over the premises so leased a railroad
had been constructed, and was being operated at the time the
lease was executed, and the company afterwards enjoined plain-
tiffs from mining the coal under its right of way, and plaintiffs now
seek to recover of defendants the damages sustained by reason of
the injunction. But *held* that no recovery could be had, because
the mining estate was servient to the surface estate, and the
lessees took the lease with an implied covenant that they would so
conduct their mining operations as not to damage the surface
or dominant estate by undermining it.

2. ———: ———: RIGHT TO REMOVE BUILDINGS AFTER FORFEITURE.
A mining lease made by defendants to plaintiffs provided that if
the lessees failed to pay the stipulated royalty within thirty days
after the same became due, and perform the other conditions of
the lease, the same, and all rights thereunder, should be forfeited,
and the lessors might take possession of the mine and all property
connected therewith. It also provided that upon the termination
of the lease the lessees might remove all new buildings placed on
the premises by them, unless all right thereto had been forfeited
by a forfeiture of the lease. *Held* that the right to remove the
buildings within a reasonable time after the lease was terminated
by a forfeiture for the non-payment of the royalty was not lost by
the forfeiture of the lease; because forfeitures are not favored by
the law, and will not be construed to embrace property not clearly
within the meaning of the language providing for the forfeiture.

*Appeal from Monroe District Court.* — HON. E. L.
BURTON, Judge.

FILED, SEPTEMBER 6, 1888.

ACTION upon a lease granting the right to mine coal.
Plaintiffs seek to recover damages for the breach of an
implied covenant for quiet enjoyment, and also to
recover the value of certain buildings erected on the
premises, which the defendants converted to their own
use.   Trial to the court, and judgment for defendants.
Plaintiffs appeal.

*Lafferty & Morgan, McNett & Tisdale* and *Ander-
son & Anderson*, for appellants.

*Henry L. Dashiell, H. W. Gleason* and *T. B. Perry*, for appellees.

SEEVERS, C. J.—I. A sufficient statement of the material facts applicable to the first point determined, we think, is the following : The defendants, or those under whom they claim, owned certain real estate, which was underlaid with coal. Works had been erected, a shaft constructed, and coal mined, when the defendants leased said works and all property on the premises used for mining coal to the plaintiffs, together with the right to mine coal, for which the latter agreed to pay royalty for all coal mined. The plaintiffs, under the lease, had no right to the surface, except so far as was necessary for the due prosecution of the mining right. Over the premises so leased a railroad had been constructed, and was being operated at the time the lease was executed. The plaintiffs, upon making the attempt to mine the coal under the railway company's right of way, were enjoined from so doing at the instance of such company. For the purposes of this case it must be conceded that such injunction was rightfully issued, and bound all parties to this action. But the plaintiffs claim that under the lease they had the right and were bound to mine all the coal underlying the leased premises, including that under the right of way ; and, as appellants have been deprived of such right, they have been greatly damaged. The lease provides and grants to the plaintiffs the right to mine "all the coal" under certain described premises. The contention of the appellees is that such right was subject to an implied covenant on the part of the "lessees that they, in mining the coal from under the right of way, shall do so with due regard to the rights of the owner of the surface, and leave all needed subjacent supports." The railway company, for all practical purposes, owned the surface, and the defendants the coal thereunder. The right to mine this coal was granted to the plaintiffs, and the question is, what is the extent of such right, or what does it include ? In

*1. MINING lease: construction: implied reservation of surface-owner's rights.*

the absence of a contract to the contrary, the right to mine coal underlying the surface of land is subject to an implied covenant that only so much of the coal can be removed as can be obtained without injury to the superincumbent soil or surface. In other words, as there are two estates, the right to mine is regarded as the servient estate, and can be enjoyed to such extent as will not cause injury to the dominant estate or surface. It is therefore incumbent on the owner of the mining right to leave coal sufficient, or otherwise support the surface. The authorities cited by counsel for appellees support this view, and none have been cited by counsel for appellants that conflict therewith. The authorities cited are : Wood, Landl. & T. sec. 575 ; *Jones v. Wagner*, 66 Pa. St. 429 ; *Horner v. Watson*, 79 Pa. St. 242 ; *Coleman v. Chadwick*, 80 Pa. St. 81 ; *Marvin v. Brewster Iron Mining Co.*, 55 N. Y. 538. Such being the rule in the absence of a contract, a construction of the provisions of the lease is required. All the coal under the land was granted to the plaintiffs ; that is, under the lease the right to mine and remove it was granted to the plaintiffs, subject, however, to an implied covenant that sufficient support must be left so as not to materially injure the surface or dominant estate. There is not, we think, anything in the lease which will deprive the owner of the dominant estate of such covenant, nor did the lessors, in defining the right granted, use langauge which, expressly, or by implication, shows that such covenant could not or did not exist. In addition to what has been said, the lease provides that it shall continue fifteen years, unless " all the coal in said land is sooner mined out and exhausted. But it is expressly agreed that said lease shall terminate whenever all coal under said land is mined out and exhausted." The proper construction of these provisions. is that the lease shall continue for the stated time, unless all the coal is mined which can be taken out without injury to the dominant estate. There is no language used which forbids this construction, and, under the authorities above cited, we think language

used upon which the claim of appellants is based should be clear, certain, and free from serious doubt. It was adjudged in the case in which the injunction was issued that the coal could not be removed without injury to the surface or dominant estate, and, for the reasons stated, the plaintiffs cannot recover on the first count in the petition.

II.   It is provided in the lease that if plaintiffs failed to pay the stipulated royalty within thirty days after the same became due, and to faithfully perform the conditions of the lease, the same, and all the rights thereunder, should be forfeited, and the defendants might so declare, and in a lawful manner take possession of the mine and all property connected therewith. In April, 1884, the defendants elected to declare the lease forfeited upon the ground that plaintiffs had "failed to comply with the terms, conditions and stipulations of said lease, and in particular in not paying the royalty or rent." In response to a notice of the declaration of such forfeiture, the plaintiffs, a few days thereafter, notified the defendants that, without conceding the legality of the forfeiture, "we hereby consent to a surrender, and hereby give you possession of the leased premises and property. * * * But we do not intend hereby to waive our right to remove from the premises within a reasonable time our property now situated thereon, nor any other rights growing out of said lease, except as hereinbefore surrendered." Thereupon the defendants took possession of the leased property. The lease contains this provision: "But it is expressly agreed that any new engines, boilers, pumps, or other machinery, buildings, houses, and other property placed in or upon said mine and real estate, which is not in the nature of repairs thereon, may be removed by plaintiffs, at the termination of this lease, unless all right thereto has been forfeited by plaintiffs by a forfeiture of this lease." The evidence tended to show that plaintiffs erected certain houses on the leased premises, which were not in the

nature of repairs. The plaintiffs surrendered possession of the premises to the defendants on the sixth day of May, 1884, and on the twenty-seventh day of the same month demanded possession of said houses and other property on the leased premises, including mules, car-wheels, coal-props, etc., and, failing to obtain such property, this action was brought to recover the value thereof. We believe the material controversy is as to the right of the plaintiffs to recover the value of the houses. We understand the law to be that when one person builds houses upon the land of another, with the latter's consent and agreement that they may be removed, such houses are and continue to be personal property, and the right to remove may be exercised within a reasonable time after the contract under which the erections were made has expired. *Dame v. Dame*, 38 N. H. 429 ; *Russell v. Richards*, 11 Me. 371 ; *Smith v. Benson*, 1 Hill [N. Y.] 176 ; *Vilas v. Mason*, 25 Wis. 310 ; *District Twp. of Corwin v. Moorehead*, 43 Iowa, 466. It follows, of course, if the right to remove is denied, an action may be maintained to recover the value of the buildings. We do not understand counsel for appellees to controvert the foregoing proposition. His contention is that when forfeiture was exercised and declared, the right of removal ceased to exist. The language relied on is that above quoted, and it is claimed the contract of the parties was that the houses might be removed at the termination of the lease, unless all right thereto has been forfeited by the forfeiture of the lease. Now, what is the proper construction of the provisions of the lease in relation to the removal and forfeiture? When the forfeiture was declared, the lease ceased to exist, but not necessarily so as to the right of removal. The parties, at the time of the for-feiture, would be entitled to the same rights as if the lease had expired at the time fixed and limited. In such case the right of removal could certainly be exer-cised. The lease provides that the property may be removed " unless it has been forfeited by the forfeiture of the lease." The forfeiture of the lease does not nec-

essarily forfeit the property placed on the premises. The words "unless it is forfeited" clearly show and must mean that the plaintiffs must have done something, or omitted to do something, required by the lease when a forfeiture of the houses and other personal property could be claimed. There must be a valid reason for such forfeiture, independent of the forfeiture of the lease for non-payment of rent or for any other reason disclosed in the record. Forfeitures are not favored. It is true, the lease provides that in a certain contingency all rights .of the plaintiffs under the lease shall be forfeited, and that the defendants may take possession of "said mine and all property connected therewith." Now it appears from the record that certain mules and other personal property were on the leased premises at the time the forfeiture was declared, and had been used thereon in connection with the mining operations. Clearly, we think, such property was not forfeited, and it is not so claimed. If not, why should the houses and other buildings? The provisions of the lease referred to must be construed as meaning the possession of the mine, and all right of the plaintiffs under the lease thereto, and not to personal property placed on the premises by the plaintiffs and used for mining purposes, for as to such property the right of removal existed, unless, as we have said, there was some reason why it should be forfeited independent of the provision in relation to the forfeiture of the mine. We think it should clearly appear that the lease provides that the property in question may be forfeited before it can be so declared. That such an inference can be drawn, based on a doubtful construction of the language used, is not sufficient. The question upon which this case turns was not involved in *Dostal v. McCaddon*, 35 Iowa, 318, and counsel do not so claim, as we understand. Conceding the correctness of the foregoing views, the evidence tends to show that the plaintiffs are entitled to recover on the second count in the petition, and, as the district court held otherwise, the judgment must be REVERSED.