H. D. FISCHER and J. P. KNORR, Appellants, v. JOHNSON LANE & Co., *et al.*

**License:** ABANDONMENT BY SALE. A sale of corn cribs constructed on land under a bare license or permission from the owner operates as a revocation of the license or tenancy at will and as a desertion or abandonment of the premises.

**FIXTURES:** *Personal property.* Corn cribs constructed upon the lands of another under his bare license of permission remains personal property and may be transferred as such.

| 106 | 181 |
| 111 | 29 |
| 106 | 181 |
| 126 | 720 |
| 106 | 181 |
| 130 | 343 |
| 106 | 181 |
| 131 | 122 |

TENANCY AT WILL: *Jury question.* Consent that corn cribs constructed on land under a bare license from the owner may remain thereon after their sale to a third person may be inferred from the fact that they remain on the land with the knowledge of the owner and without objection on his part for such a length of time and under such circumstances that objection might have been expected if the owner of the land did not assent.

REMOVAL BY TENANT. An agreement that structures erected upon land by permission or license of the owner may be removed by the person making them will be implied in the absence of any interest of the latter in enhancing the value of the land or of other facts or circumstances showing an intention that the structure should not be removed.

REMOVAL BY TRESPASSER. A trespasser who makes erections on the land of another cannot remove the structures erected.

**Evidence:** BILL OF SALE. The bill of sale by which the personalty is transferred is the best evidence of sale.

HARMLESS ADMISSION OF. The admission of evidence of conversations between the parties to a sale of corn cribs, at the time of the sale, in regard to the seller's statement as to the terms under which he had possession of the land on which the cribs were placed, in an action by a subsequent purchaser of the land against the buyer for removing the cribs, was not prejudicial to plaintiff, where the court told the jury that the seller, as a tenant at will of the land, could not transfer the right of possession, and the sale amounted to an abandonment of the premises, and when this conversation was but a repetition of undisputed testimony.

**Practice:** ESTOPPEL: *Procedure.* A party is not estopped from asserting a claim on the trial by the fact that he made a different representation in regard thereto to the adverse parties before the trial, where the latter was not misled thereby.

**Appeal:** OBJECTION BELOW. The objection to a motion to strike out a motion to a pleading that the motion was not in writing, as required by Code, section 3551, cannot be first urged on appeal.

**Vendor and Purchaser:** NOTICE. A purchaser of land with notice that corn cribs thereon were claimed by a third party, in possession acquires no better claim to the cribs than his vendor had.

*Appeal from Hardin District Court.*—HON. B. P. BIRDSALL, Judge.

FRIDAY, OCTOBER 7, 1898.

THE plaintiffs purchased eleven and two-tenths acres of land of the Western Town Lot Company, September 23,

1892, on which were standing five hundred and seventy-two feet of corn cribs and forty-two rods of fence, which the defendants removed in December of the same year. This is an action for the value of the cribs and fence. Trial to jury. Verdict and judgment for the defendants, and the plaintiffs appeal.—*Affirmed.*

*Albrook & Lundy* for appellants.

*Wesley Martin* and *Huff & Ward* for appellees.

LADD, J.—The corncribs in controversy were erected on what are called two inch by four or six inch stringers, resting on the earth, and on land belonging to Western Town Lot Company. All but five lengths were placed there by Nichols Bros., prior to 1886, by virtue of an oral understanding with the owner that they might remain on the land until sold, or the firm notified to remove them. In October, 1891, Nichols Bros. transferred these cribs by bill of sale to Johnson, Lane & Co., who constructed the five lengths mentioned. In September, 1892, the Western Town Lot Company contracted for the sale of this land to the plaintiffs, agreeing to execute a conveyance thereof, with usual covenants of warranty, upon the payment of the purchase price. These cribs were not mentioned, and in December of the same year were removed by the defendants, of whom compensation is claimed. It may be added that theretofore recovery for the value of the same property was denied plaintiffs in an action against the Western Town Lot Company. In that case it was alleged Johnson, Lane & Co. had the right to remove the cribs, while here it is asserted they have become a part of the realty. As the defendants do not appeal, however, we are not permitted to pass upon the ruling by which the plaintiffs were held not to be estopped from taking these contradictory positions. The evidence shows without dispute that neither Nichols Bros. nor Johnson, Lane & Co. intended these cribs as permanent improvements on the

land. They were placed near the railway to facilitate loading corn for shipment over the line of the Chicago & Northwestern Railway Company, which controlled the Western Town Lot Company; and, if the defendants are deprived of their property or its value, this must be done because of the technical rules of the law. The plaintiffs were fully advised, when they purchased the land, of the occupancy for many years by Nichols Bros., and that Johnson, Lane & Co. were then in possession. The evidence also tends to show that they had actual knowledge that the latter company claimed to own the buildings. Whatever doubt, however, there may be on the question of notice was resolved in favor of the defendants by the verdict. The plaintiffs, then, having notice, acquired no better claim to the cribs than the Western Town Lot Company had.

II. Nichols Bros. had no interest in the land, and only the bare license or permission to occupy it for a particular purpose. The cribs were then personal property, and might be transferred as such. *Walton v. Wray,* 54 Iowa, 531; *Melhop v. Meinhart,* 70 Iowa, 685; *Mickle v. Douglass,* 75 Iowa, 82; *Wilgus v. Gettings,* 21 Iowa, 178; *Bank v. Stanton,* 55 Minn. 211 (56 N. W. Rep. 821); *Carlin v. Ritter,* 68 Md. 478 (13 Atl. Rep. 370; 16 Atl. Rep. 301). And of the sale the bill of sale was the best evidence. But the sale or transfer of the right of occupancy operated as a revocation of the license or tenancy at will, and must be construed as a desertion or abandonment of the premises. *Cooper v. Adams,* 6 Cush. 90; *King v. Lawson,* 98 Mass. 311; *Doak v. Donelson,* 2 Yerg. 249 (24 Am. Dec. 485). This is because a mere tenant at will has no interest or estate in the land. The important inquiry, then, was whether the defendants were mere trespassers, or in possession with the assent of the Western Town Lot Company. If as trespassers, then they had no right to remove the buildings; if in possession with the assent of the owner, in the absence of other proof they were presumed to

be tenants at will.   Code, section 2991.   There is no direct testimony of consent on the part of the owner; but we think the circumstances were such that this might have been inferred, and was, therefore, a question of fact to be determined by the jury.   The Western Town Lot Company was organized and existed for the purpose of promoting the business of the Chicago & Northwestern Railway Company. It was one of its agencies in carrying on its affairs, and was controlled and managed solely in its interest.   Its land commissioner was that of the railroad company, whose division superintendents were authorized to exercise control over all its lands.   It was customary to permit the erection of cribs and warehouses on these lands near the track, in order to promote the traffic over the railway.   Leases were usually, though not always, made.   Johnson, Lane & Co. had been in possession of the grain elevators and corncribs at Hubbard for nearly a year.   The change in ownership had been brought to the attention of the railway company through its local agent. The grain had been shipped over its road, a part of the cribs constructed, and all of them filled with corn which was shipped during this time.   Their possession was of such a character as to call the attention of the officers of the railway company as well as of the Town Lot Company to their occupancy of the land, and of their claims of the right to do so. No objection was made to such possession.   It is true that the officers of the Town Lot Company deny knowledge of the location of the cribs.   But this simply raises an issue, as there is no evidence denying such knowledge on the part of the division superintendents of the railway, who gave Nichols Bros. leave to construct the cribs, and who, under the evidence, were authorized to consent to the use of the premises by the defendants.   We think, from these facts, in the absence of other evidence, knowledge on the part of the railroad officials, and their consent to such possession, may be inferred. The defendants had continued in possession for such a length of time and under such circumstances that objection might well have been expected had not the officials assented thereto.

That consent to occupancy may be inferred from actual possession with the knowledge of the owner, in the absence of objection, is settled in *Martin v. Knapp*, 57 Iowa, 342. It must be borne in mind we are not determining whether there was assent, but whether the circumstances were such that this issue was properly submitted for the determination of the jury.

III. The question now arises whether, even though Johnson, Lane & Co. occupied the premises with their cribs, and erected others with the assent of the owner, they might remove them without any express agreement so to do. We think that an agreement for the removal of the cribs may well be implied from a separate ownership of them and the real property. It is evident there was no intention by either party that they become a part of the land. The defendant had no estate in the realty, and for this reason no interest in enhancing its value. "Where the erections are made by one having no estate in the land, and hence no interest in enhancing it value, by the permission or license of the owner, an agreement that the structures shall remain the property of the person making them will be implied, in the absence of any other facts or circumstances tending to show a different intention." *Bank v. Stanton*, 55 Minn. 211 (56 N. W. Rep. 822).

IV. The appellant pleaded in reply that the defendants were estopped from setting up occupancy as tenants at will, because Johnson, a member of the firm, had informed appellants that his firm held a lease of the premises from the Western Town Lot Company, which gave it ninety days within which to remove the cribs, and that on these statements they based their actions against the Western Land Company. This portion of the reply was stricken from the files on motion of the defendants, made orally during the course of the trial, but taken down by the official stenographer. The appellants made no objection, at the time, to the manner of making the motion; and, having failed to do so, they will be deemed to have acquiesced therein, and to

have waived compliance with the statute 'which requires motions assailing pleadings to be in writing. Code, section 3551. Whether the ruling on this motion was correct, we need not determine, as the evidence shows conclusively that the plaintiffs were in no way misled by what Johnson is said to have stated. The action based upon this statement was dismissed, and another begun, after the plaintiffs were fully advised they could not rely on the alleged statement of Johnson.

V.    Nichols and Johnson were permitted to testify to a conversation had between them at the time of the sale of the cribs, in which Nichols related the terms under which he held possession. While this was in the nature of hearsay, it was without prejudice, because (1) it was simply a repetition of what Nichols had testified to, and which was undisputed, and (2) the court advised the jury that Nichols Bros., as tenants at will, could not transfer right of possession, and the sale by them amounted to an abandonment of the premises.

What has been said disposes of the criticism of the instructions. Those requested, in so far as they announced correct rules of law, were included in those given by the court. The other errors assigned require no consideration. The judgment is AFFIRMED.